UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHESTER R. HOFFMANN,

        Plaintiff,

vs.                                                      Case No. 3:17-cv-361-J-39JRK

ANTHONY MCCRAY, et al.,

        Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Chester R. Hoffmann is proceeding on a pro se Amended Civil Rights Complaint (Doc. 9; Complaint) against Chad Gaylord, Thomas North, Anthony McCray, Robert Davis, Michalah Mosely, Joseph Harris, and three John Does, identified as John Doe "B," John Doe "C," and John Doe "E."[1] In his Complaint, Plaintiff asserts violations of the 4th, 6th, 8th, and 14th Amendments. Complaint at 4.[2] He alleges Defendants North, McCray, Harris, and John Does "C" and "E" used excessive force against him on October

_____

[1] In his Complaint, Plaintiff identifies Defendant Gaylord as John Doe "A" and Defendant Harris as John Doe "D." He provided the names of these Defendants by motion on September 14, 2018. See Motion (Doc. 53). As such, the Court directed the Clerk to update the docket to reflect the proper identification of these Defendants. See Order (Doc. 55). Plaintiff has not successful identifying the other John Doe Defendants.

[2] Page numbers reflect the pagination assigned by the Court's electronic docketing system, which are found at the top of each page.

17, 2016 (at two separate times), when he was housed at Hamilton Correctional Institution (HCI). Id. at 7-8. Plaintiff asserts Defendants Davis and Mosely failed to intervene, and Defendant Gaylord, a nurse, failed to report the force incidents. Id. Finally, he asserts Defendant North violated his rights under the Sixth and Fourteenth Amendments in connection with a disciplinary hearing resulting in an adjudication of guilt. Id. As relief, Plaintiff seeks a declaration that Defendants violated his constitutional rights, compensatory and punitive damages, litigation costs, to have the alleged false disciplinary report removed from his file, to be placed back in the general population, and to be transferred to a different correctional facility. Id. at 16.

Before the Court are two motions for summary judgment: one filed by Defendants McCray, Davis, Mosely, and North (Doc. 57; McCray Motion), and one filed by Defendant Harris (Doc. 70; Harris Motion).[3] Plaintiff has responded to both Motions (Docs. 67, 80; collectively, "Pl. Responses").[4] Accordingly, the motions are ripe for this Court's review.

---

[3] Also pending before the Court is Defendant Gaylord's motion to dismiss (Doc. 89). However, Plaintiff has not yet responded to Defendant Gaylord's motion.

[4] The second response is a duplicate of the first, with only the date changed. The Court will cite the responses together.

## II. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted).

Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Complaint Allegations

In his Complaint, which is verified under penalty of perjury,[5] Plaintiff describes two instances of excessive force at HCI on October 17, 2016. The first instance of force occurred inside

---

[5] The factual assertions a plaintiff makes in a verified complaint satisfy "Rule 56's requirements for affidavits and sworn declarations," and are therefore given the same weight as factual statements made in an affidavit. Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014).

housing unit A, where Plaintiff's cell was located. Complaint at
7. According to Plaintiff, Defendants Davis, McCray, and Mosely
were counseling inmates about cleanliness. Id. at 11. Defendant
Davis informed the inmates they were being denied certain
privileges because of cleanliness violations, and Plaintiff spoke
up, stating the punishment was unfair. Id. Plaintiff and Defendant
McCray "began going back and forth concerning the issue." Id.
Plaintiff alleges Defendant McCray was yelling at him. Plaintiff
told Defendant McCray he was a mental health ("psych") inmate and
did not like to be yelled at, which made Defendant McCray yell
louder. Id. Plaintiff alleges he "acted like he was going to lunge
at McCray," but did not carry through with the action. Defendant
McCray then instructed Plaintiff to get down from his bunk, which
Plaintiff declined to do. Id.

After Plaintiff declined to get off his bunk at Defendant
McCray's request, Defendant Davis ordered Plaintiff to get down.
Plaintiff then complied. At Defendant McCray's instruction,
Plaintiff began walking toward the bathroom. Plaintiff alleges he
had his hands in the air. Id. Plaintiff asserts Defendant McCray
said, "when we get to the bathroom I'm going to show you who is
really is [sic] [psych]." Id. Plaintiff stopped walking, turned
around to say something to Defendant McCray, but then changed his
mind, and "turned back around with both hands in the air." Id.
Plaintiff asserts Defendant McCray grabbed him from behind,

slammed him face-first to the floor, handcuffed him, and sprayed him in the face with chemical agents. Id. at 11-12.

Defendants Davis and McCray then escorted Plaintiff to the center gate, where the second alleged incident occurred. Id. at 12. At the center gate, Defendant McCray informed Defendant North that Plaintiff tried to hit Defendant McCray. Plaintiff asserts Defendant North, Defendant Harris, and John Does "C" and "E" placed a spit shield over his head and "began striking [him] in his head and face area." Id. Plaintiff also asserts Defendant North rammed "his knee into [Plaintiff's] face and the officers ram[m]ed his head into a post and twisted his arms up and tried to break his fingers." Id. Officers then escorted Plaintiff to dorm H, where Plaintiff took a decontamination shower "to wash off the 'blood' and 'chemical agents.'" Id.

After the decontamination shower, officers placed a spit shield over Plaintiff's head again, allegedly to "hide and cover-up [Plaintiff's] injuries." Id. Plaintiff asserts that, upon arriving at the medical evaluation room, Defendant North threatened him, stating "how you are treated here depends on what you say and do." Id. Plaintiff claims the nurse, Defendant Gaylord, did not document all his injuries and did not remove the spit shield from his head to check his face for injuries. Id. After the medical examination, Plaintiff was placed in a cell with only boxers for seven days. Id. at 13. In the days after his placement

in the cell, Plaintiff's requests for medical treatment and grievance forms were ignored. Plaintiff saw his mental health counselor, John Doe "B," about four days after the incidents.

Plaintiff asserts he suffered a concussion resulting from Defendant McCray's attack, and the chemical spray caused pain, temporary blindness, and respiratory problems. Id. at 15. He alleges the assault that occurred at the center gate resulted in a pulled muscle, sore fingers, lumps to his head, a "busted nose," and black eyes. Id. Plaintiff also claims to have suffered mental anguish, fear, depression, and other emotional injuries. Id.

In addition to his Eighth Amendment claims, Plaintiff asserts Defendant North violated his Sixth and Fourteenth Amendment rights in connection with a disciplinary action that resulted in Plaintiff's loss of "good adjustment transfer" and placement on close management. Id. at 9, 13.

## IV. Legal Analysis & Conclusions of Law

### A. Eleventh Amendment Immunity

Defendants North, McCray, Davis, Mosely, and Harris assert they are entitled to Eleventh Amendment immunity as to any claims against them for damages in their official capacities. See McCray Motion at 1; Harris Motion at 1. Plaintiff appears to misunderstand Defendants' Eleventh Amendment immunity defense because, in response, he simply reiterates that Defendants used excessive force against him. Pl. Responses at 14.

When a plaintiff sues a state actor in his official capacity, "the action is in essence one for the recovery of money from the state." Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). As such, "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Id. (finding the FDOC Secretary was immune from suit in his official capacity). To the extent Plaintiff seeks monetary damages from Defendants North, McCray, Davis, Mosely, and Harris in their official capacities, they are entitled to Eleventh Amendment immunity. Therefore, Defendants' motions are due to be granted as to Plaintiff's claims for monetary damages from them in their official capacities.

## B. Qualified Immunity

Defendants McCray, Davis, Mosely, and Harris invoke qualified immunity. See McCray Motion at 6; Harris Motion at 6.[6] Plaintiff states Defendants are not entitled to qualified immunity because they used excessive force against him. See Pl. Responses at 11. As to the first incident, Plaintiff claims he did not make any aggressive movement toward Defendant McCray when Defendants were escorting him, and Defendant McCray sprayed him with pepper spray "until the can was empty." Id. at 4. As to the second incident,

---

[6] Defendant North does not assert a qualified immunity defense. See McCray Motion at 6.

Plaintiff asserts Defendant Harris punched him in the face while he had a spit shield covering his head and was fully restrained. Id. at 5.

An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir.), cert. denied, 138 S. Ct. 72 (2017). Here, the uncontradicted evidence demonstrates Defendants McCray, Davis, Mosely, and Harris were acting within the scope of their discretionary duties at the time of the alleged incidents, which Plaintiff does not dispute. As such, Defendants carry their burden on qualified immunity. The burden now shifts to Plaintiff.

To overcome a qualified immunity defense, a plaintiff bears the burden to demonstrate two elements: the defendant's conduct caused plaintiff to suffer a constitutional violation, and the constitutional violation was "clearly established" at the time of the alleged violation. Alcocer, 906 F.3d at 951. "Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Id. (quoting Zatler, 802 F.2d at 401). As such, the Court will analyze Plaintiff's excessive force claim against Defendants separately. Before doing so, the Court will set forth the relevant Eighth Amendment principles.[7]

The Eighth Amendment's proscription against cruel and unusual punishment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987).

_____

[7] Plaintiff asserts Defendants' use of force violated the Fourth and Eighth Amendments. See Complaint at 4, 8. Because Plaintiff was in the custody of the FDOC at the time of the alleged use of force, his claims arise solely under the Eighth Amendment, not the Fourth Amendment. See Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010) (explaining a prisoner's claim of excessive force implicates the Eighth Amendment). Cf. Williams v. Bauer, 503 F. App'x 858, 859 n.2 (11th Cir. 2013) (noting the district court properly construed the plaintiff's claim as arising under the Fourth Amendment when he alleged officers used excessive force during his arrest).

As such, the Eighth Amendment prohibits "punishment grossly disproportionate to the severity of the offense." Id. In analyzing use of force incidents, courts must be mindful that they generally should not interfere in matters of prison administration or inmate discipline. Id. at 322. Thus, courts must balance concerns of an inmate's right to be free from cruel and unusual punishment with a prison official's obligation to ensure a safe and secure institution. Id. 321-22. "The Court's decisions in this area counsel that prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

Because of the deference afforded prison officials, an inmate against whom force is used to restore order or quell a disturbance demonstrates an Eighth Amendment violation only when the official's action "inflicted unnecessary and wanton pain and suffering." Id. (internal citations omitted). See also Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991) (quoting Whitley, 475 U.S. at (1986)) ("The Supreme Court has held that . . . any security measure undertaken to resolve [a] disturbance gives rise to an Eighth Amendment claim only if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing

harm.'") (emphasis is original). When an officer uses force to quell a disturbance, the force should cease once the inmate has been controlled. A continued use of harmful force may constitute punishment in violation of the Eighth Amendment if the behavior giving rise to the need for force has ceased. Ort, 813 F.2d at 324.

The Eleventh Circuit has articulated five factors courts may consider in determining whether an officer's use of force was in good faith or carried out maliciously and sadistically for the purpose of causing harm:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley, 475 U.S. at 321; Hudson v. McMillian, 503 U.S. 1, 7 (1992)). See also Ort, 813 F.2d at 323; Williams, 943 F.2d at 1575.

When an officer uses excessive force against an inmate, officers who are present and in a position to intervene can be liable if they do not. Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007) ("The law of this circuit is that an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force,

can be held liable for his nonfeasance.") (internal quotation marks omitted).

Applying the relevant factors and viewing the facts in the light most favorable to Plaintiff, Defendants are not entitled to qualified immunity as to either instance of alleged force. First, Plaintiff asserts Defendant McCray used excessive force against him when Defendant McCray was escorting him from his cell to the bathroom.[8] Complaint at 11-12. Plaintiff alleges the other officers present, Defendants Davis and Mosely, failed to intervene. Id. at 9, 12. Defendants McCray, Davis, and Mosely do not dispute force was used against Plaintiff. However, they assert "the actions taken by Defendants were objectively reasonable given the circumstances [they] faced." McCray Motion at 8. Defendants maintain Plaintiff "swung his right elbow and struck Sgt. McCray in the torso." Id. at 6.

Plaintiff disputes Defendant McCray's version of events. In his Complaint, Plaintiff alleges he had his hands in the air at the relevant times. Complaint at 11. Plaintiff does concede that, during the escort, he turned around to say something to Defendants.

---

[8] Plaintiff alleges Defendant McCray told him to walk to the bathroom, and Defendant McCray states he was taking Plaintiff to the dayroom. See Complaint at 11, 23. Where Defendants were escorting Plaintiff is not material; what is material is what happened when Defendants McCray, Davis, and Mosely were escorting Plaintiff.

However, Plaintiff asserts he "changed his mind and turned back around with both hands in the air." Id. Plaintiff disputes striking Defendant McCray. In his Responses, Plaintiff explains: "I was walking . . . with my hands in the air when [Defendant McCray] attacked me from behind and throw [sic] me to the ground handcuffs [sic] me and then begins to spray me with peper [sic] spray until [sic] the can was empty (at no time was I resisting or talking back)." Pl. Responses at 4.

Under applicable Eighth Amendment jurisprudence, the factual discrepancy between the parties is material and must be resolved by a jury, not by the Court on summary judgment. See Velazquez, 484 F.3d at 1342 (holding the inmate's and the prison guards' contradictory stories presented an issue of fact for the jury). Cf. Sanks v. Williams, 402 F. App'x 409, 413 (11th Cir. 2010) (holding the district court properly granted summary judgment in favor of the defendant because the evidence showed the defendant "acted with the appropriate amount of force to [e]nsure his safety and maintain order, and ceased using force when it was no longer necessary").

At this juncture, the Court must accept Plaintiff's allegations as true and construe the evidence in a light most favorable to him. Plaintiff describes conduct that, if true, rises to the level of an Eighth Amendment violation. Plaintiff alleges Defendant McCray "attacked" him from behind, suggesting Plaintiff

was not the aggressor but the victim,[9] and claims that after Defendant McCray handcuffed him, Defendant McCray used an entire can of chemical spray on him. Even if Plaintiff struck Defendant McCray in the torso, a jury could find Defendant McCray used more force than necessary or continued using harmful force after Plaintiff had been subdued. Indeed, Plaintiff alleges he heard Defendant Davis warn Defendant McCray during the assault to temper his actions because of the cameras. See Complaint at 12. Plaintiff alleges Defendant Davis said, "don't forget the cameras," and Defendant McCray responded, "f*@k the cameras." Id.

Accepting Plaintiff's allegations as true, a reasonable jury could conclude Defendant McCray used force against Plaintiff unnecessarily and for the purpose of causing harm or used more force than necessary under the circumstances. See Ort, 813 F.2d at 325 ("Prison officials step over the line of constitutionally permissible conduct if they use more force than is reasonably necessary in an existing situation."); see also Nasseri v. City of Athens, 373 F. App'x 15, 19 (11th Cir. 2010) ("It is excessive force for a jailer to continue using force against a prisoner who already has been subdued."). As such, Defendant McCray is not

---

[9] Plaintiff concedes that, while on his bunk, he made a threatening movement toward Defendant McCray by acting as if he were going to lunge at the officer. Complaint at 11. However, Plaintiff claims he did not actually lunge at Defendant McCray, and Defendant McCray does not argue the "mock lunge" was the threatening action that precipitated the use of force. See McCray Motion at 6.

entitled to qualified immunity. See Danley, 540 F. 3d at 1309. Because Defendants Davis and Mosely were present during the alleged use of force and failed to prevent or stop it, they are not entitled to qualified immunity on Plaintiff's failure-to-intervene claim.

Next, as to the second instance of force, Plaintiff similarly demonstrates a genuine issue of material fact, overcoming Defendants Harris's qualified immunity defense. Plaintiff asserts Defendant Harris gratuitously beat him while Plaintiff was handcuffed and had a spit shield over his head. Complaint at 12. In his Response, Plaintiff asserts that after the spit shield was placed over his head, Defendant North kneed him in the face, breaking his nose. Pl. Responses at 5. Plaintiff began staggering and stepped on John Doe "C's" foot. Defendant North then ordered that Plaintiff be placed in ankle cuffs. After Plaintiff's ankles were cuffed, "John Doe C and Harris started to punch Plaintiff in the face." Id. Plaintiff also states officers rammed him into a post, though it is unclear whether Defendant Harris participated in that conduct. Id.; see also Complaint at 12.

Defendant Harris does not directly dispute using force against Plaintiff, though he implies some force was used and justified under the circumstances. See Harris Motion at 6-7. For instance, Defendant Harris cites legal authority that describes instances in which officers are afforded discretion to use force reasonably necessary under the circumstances. Id. (quoting Florida

16

Statutes § 944.35 (describing circumstances under which an officer may use force against an inmate); <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 312 (2015) (analyzing an officer's use of deadly force in response to a perceived threat of harm)).

In support of his motion, Defendant Harris merely relies on footage from the hand-held camera (Harris Ex. A).[10] The video footage Defendant Harris provides, however, does not contradict Plaintiff's allegations. The footage starts with Plaintiff standing outside (at the center gate), bent over at the waist, with Defendant North directly in front of him, Defendant Harris on one side, and John Doe "D" on the other. <u>See</u> Harris Ex. A. Defendant North instructs Plaintiff to stop spitting and to stand upright. Plaintiff complies. When Plaintiff stands, his head becomes visible. He has a spit shield over his head at that time. <u>Id.</u> The officers then escort him to the decontamination shower, with the hand-held camera operator following. As Plaintiff walks away from the camera, it becomes evident that he has cuffs arounds his ankles. <u>Id.</u>

There is no video footage capturing events that preceded the placement of the spit shield and the ankle cuffs, which is the

---

[10] With the Court's permission, Defendant Harris filed footage of the hand-held camera under seal. <u>See</u> Order (Doc. 73). This footage does not show what occurred inside dorm A, where the initial use of force occurred, and Defendants have not provided footage from the fixed-wing cameras.

relevant time period as described by Plaintiff. Plaintiff claims Defendant Harris beat him after the spit shield was placed over his head and after his ankles were cuffed. See Complaint at 12; Pl. Responses at 5. As such, the Court may not rely upon the video evidence to rule as a matter of law that Defendant Harris did not beat Plaintiff as Plaintiff describes. See Logan v. Smith, 439 F. App'x 798, 801 (11th Cir. 2011) (holding the district court improperly granted defendants summary judgment when it relied, in part, on video evidence that did not capture events during the time of the alleged incidents). If Plaintiff's allegations are true, a jury reasonably could conclude Defendant Harris used force against Plaintiff for no reason or as punishment for Plaintiff's actions toward Defendant McCray. Such conduct amounts to an Eighth Amendment violation. Accordingly, Defendant Harris is not entitled to qualified immunity.

In sum, Plaintiff carries his burden on the first prong of the qualified immunity analysis as to Defendants McCray, Davis, Mosely, and Harris. He asserts facts that, if true, demonstrate conduct proscribed by the Eighth Amendment. As such, Defendants are not shielded by the doctrine of qualified immunity, which has no application when officers "knowingly violate an inmate's constitutional rights." See Alcocer, 906 F.3d at 951.

When a plaintiff carries his burden on the first prong of the qualified immunity analysis in an excessive force case, the court

need not proceed to the second prong. The Eleventh Circuit has held, "'there is no room for qualified immunity' in . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable [officer] could believe that his actions were lawful." Danley v. Allen, 540 F.3d 1298, 1310 (11th Cir. 2008), overruled in part on other grounds, Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (quoting Johnson v. Breeden, 280 F.3d 1308, 1321–22 (11th Cir. 2002)). Accordingly, Defendants' motions are due to be denied to the extent they assert qualified immunity shields them from liability.

### C. Damages Available Under 42 U.S.C. § 1997e(e)

Defendants North, McCray, Davis, Mosely, and Harris argue compensatory and punitive damages are unavailable to Plaintiff because he did not sustain physical injuries from the force incidents. McCray Motion at 12; Harris Motion at 9. Defendants McCray, Davis, Mosely, and North, in support of their motion, offer Plaintiff's medical records (Doc. 57-1; McCray Ex. A) and the affidavit of Dr. Timothy Warren (Doc. 57-2; McCray Ex. B).

The Prison Litigation Reform Act (PLRA) requires that a plaintiff seeking damages demonstrate the conduct he alleges violated his constitutional rights caused a physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

The PLRA does not define "physical injury," but the Eleventh Circuit has explained a physical injury is one that is not simply de minimis, though it "need not be significant." Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) (per curiam) (citing Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999)). Bruising and scrapes fall into the category of de minimis injuries. Id. Accord Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (holding vague back injuries and scrapes amounted to de minimis injuries). On the other hand, courts have recognized that broken bones and a concussion may constitute more than de minimis injuries. See, e.g., Tate v. Rockford, 497 F. App'x 921, 925 (11th Cir. 2012) (suggesting as dicta, broken bones would constitute more than a de minimis injury); Flanning v. Baker, No. 5:12CV337-MW-CJK, 2016 WL 4703868, at *6 (N.D. Fla. Aug. 16, 2016), report and recommendation adopted, No. 5:12CV337-MW/CJK, 2016 WL 4703862 (N.D. Fla. Sept. 7, 2016) (citing cases that recognize a concussion is more than de minimis).

According to the medical records, Defendant Gaylord conducted a post-use-of-force exam. See McCray Ex. A at 1. Defendant Gaylord noted Plaintiff had no complaints of pain and showed no signs or symptoms of acute distress. Plaintiff had an abrasion to his upper left back, which was not bleeding. Id. Dr. Warren avers he reviewed

Plaintiff's medical records (provided as Ex. A) related to the use-of-force incident. See McCray Ex. B at 1-2. Dr. Warren concludes the "medical record contradicts Plaintiff's claims that he suffered any injury apart from a small abrasion on his back." Id. at 2. The only positive diagnosis was bi-polar disorder, which Plaintiff suffered prior to the alleged incident. Id.

The medical records and affidavit Defendants offer demonstrate Plaintiff suffered no more than de minimis injuries. However, Plaintiff asserts Defendant North threatened him by telling him how he would be treated in the medical evaluation room "depends on what you say and do." Complaint at 12. Plaintiff further contends Defendants took affirmative steps to conceal the worst of his injuries by placing a spit shield over his head prior to the medical exam. Id. Finally, Plaintiff alleges Defendant Gaylord did not document all of his injuries, nor did Gaylord remove the spit shield to assess facial injuries.[11] Id.

While some of Plaintiff's physical injuries can be described as de minimis, the Court declines to find as a matter of law that a concussion and a broken nose fall into that category. Plaintiff

---

[11] Video footage submitted by Defendant Harris in support of his motion shows the post-use-of-force exam. Defendant Gaylord did not remove Plaintiff's spit shield during the exam, though it appears Defendant Gaylord briefly looked through the mesh to inspect Plaintiff's face. There is no audio of the medical examination; it occurred behind a closed door with a window.

alleges he requested medical treatment in the days following the incidents, but his requests were ignored. Id. at 13. Construing the facts in the light most favorable to Plaintiff, he demonstrates a genuine issue of material fact as to the extent of his injuries.[12] As such, Defendants' motions are due to be denied to the extent they argue Plaintiff's requests for compensatory and punitive damages are barred under the PLRA.

### D. **Heck-Bar**[13]

Defendants McCray, Davis, Mosely, and North maintain Plaintiff's due process claim is Heck-barred because an adjudication in Plaintiff's favor would "by necessity invalidate the disciplinary conviction." McCray Motion at 12.[14] In response,

---

[12] The video evidence Defendant Harris provides shows Plaintiff's face, covered by the mesh spit shield, as he is walking out of the medical exam room. See Harris Ex. A. There are no obvious facial injuries or blood. However, Plaintiff had previously taken a decontamination shower; if there had been blood on his face, it could have been washed away. Moreover, when Plaintiff was escorted from the center gate to the decontamination shower, the back of his spit shield was stained with a red/brown substance, which could have been blood. To the extent there remain factual discrepancies and credibility issues, this Court may not resolve those in favor of Defendants on summary judgment. It is not the province of this Court when ruling on a motion for summary judgment to make credibility determinations. See Anderson, 477 U.S. at 249 ("[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter.").

[13] Heck v. Humphrey, 512 U.S. 477 (1994).

[14] In his Complaint, Plaintiff appears to assert a due process claim against Defendant North only. See Complaint at 9. In Defendants McCray, Davis, Mosely, and North's motion for summary judgment, they jointly assert an argument that Plaintiff's due process claim is Heck-barred. See McCray Motion at 8. In other

Plaintiff asserts he was denied due process because he was not afforded advance notice of the disciplinary hearing and was deprived of the opportunity to present witnesses and evidence. See Pl. Responses at 6, 7. He also states Defendant North should not have been a member of the disciplinary review team, and the investigator failed to review camera footage and interview witnesses. Id. at 7-9. Plaintiff further asserts he was denied due process related to his status as a "psych" inmate, stating the Florida Administrative Code requires "that no disciplinary action shall be initiated until[] [the inmate's] mental health care provider has been contacted." Id. at 9-10.[15]

The Supreme Court in Heck held a state prisoner's claim for damages "is not cognizable under § 1983 . . . . [if] a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. The Heck-bar has its origins in Preiser v. Rodriguez, 411 U.S. 475 (1973), which held the sole remedy for a prisoner's federal claim seeking restoration of good-time credits is through a writ of habeas corpus. The

_____

words, Defendants do not address the claim as directed solely to Defendant North. Id. To the extent Plaintiff asserts his due process claim against Defendants McCray, Davis, and Mosely, in addition to Defendant North, the Court's analysis is equally applicable.

[15] Plaintiff references protections under the Americans with Disabilities Act (ADA). See Pl. Responses at 9. He does not assert a claim under the ADA in his Complaint, however.

Supreme Court later expanded the Heck-bar to a prisoner's challenge to disciplinary proceedings. See Edwards v. Balisok, 520 U.S. 641, 643 (1997). In Balisok, the Court held a prisoner's claim "for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Id. at 648.

The Heck-bar does not automatically apply in all cases in which prisoners challenge prison disciplinary adjudications. See Roberts v. Wilson, 259 F. App'x 226, 228 (11th Cir. 2007) (discussing Heck, Balisok, and their progeny in the context of a Florida prisoner's claim challenging disciplinary proceedings resulting in a finding of guilt). As such, the same facts underlying a disciplinary decision may give rise to a claim under § 1983 without running afoul of Heck. Davis v. Hodges, 481 F. App'x 553, 554 (11th Cir. 2012) (citing Dyer v. Lee, 488 F.3d 876, 879–80 (11th Cir. 2007)).

The application of Heck hinges on the nature of the disciplinary action, the sentence imposed, and the plaintiff's allegations. A district court should dismiss a claim brought under § 1983 if that claim "would necessarily affect the fact or duration of [the prisoner's] confinement." Davis, 481 F. App'x at 554 (citing Wilkinson v. Dotson, 544 U.S. 74, 79 (2005); Muhammad v. Close, 540 U.S. 749, 754 (2004)). For instance, if a § 1983 claim

24

"calls into question the validity of the deprivation of" good-time credits, the Heck-bar applies. Richards v. Dickens, 411 F. App'x 276, 278 (11th Cir. 2011) ("[I]f good-time credits have been eliminated, a prisoner's § 1983 suit challenging a disciplinary action may be construed as seeking a judgment at odds with his conviction or with the state's calculation of time that he must serve for the underlying sentence.").

Here, Plaintiff received a disciplinary report for battery on a corrections officer based on Defendant McCray's contention that Plaintiff struck him in the torso. Complaint at 13. Plaintiff attaches the disciplinary report to his Complaint. The report, completed by Defendant McCray, identifies Plaintiff as the aggressor. Id. at 23. Defendant McCray explains he, Defendant Davis, and Defendant Mosely were counseling inmates in Plaintiff's housing unit about cleanliness. Defendant McCray writes the following:

> While counseling with [Plaintiff] he became argumentative and lunged toward me while on his assigned top bunk . . . . I ordered [Plaintiff] to get down from his bunk and walk to the dayroom to counsel with him away from his bunk and other inmates present. [Plaintiff] began walking toward the dayroom with his hands up. [Plaintiff] then swing [sic] his right elbow and struck me in the midsection torso area. Chemical and physical force was utilized in self-defense.

Id. Based upon Defendant McCray's report and witness statements, the disciplinary team found Plaintiff guilty and sentenced him to

sixty days in disciplinary confinement. Id. Plaintiff lost thirty days of gain time, and "a good adjustment transfer [was] denied." Id.

Upon review, the Court finds Plaintiff's due process claim is Heck-barred because a ruling in his favor would necessarily call into question the validity of the disciplinary conviction, which included a loss of gain time. Notably, the disciplinary conviction has not been invalidated. See McCray Motion at 12. If Plaintiff prevails on his claim, a jury would have to accept his allegations, which are directly contradictory to Defendant McCray's version of events as accepted by the disciplinary hearing team. See Complaint at 13. Plaintiff alleges he did not strike Defendant McCray in the torso area, but rather had his hands in the air. Id. at 11. See also Pl. Responses at 4. Plaintiff alleges Defendant McCray engaged him in an unprovoked attack and falsified the disciplinary report, while the disciplinary hearing team accepted Defendant McCray's account that "chemical agents and physical force [were] utilized in self-defense" after Plaintiff struck Defendant McCray. Complaint at 11, 25.

If a jury accepts Plaintiff's allegations that he did not in fact hit Defendant McCray or otherwise engage in conduct to justify a use of force against him, a finding in Plaintiff's favor calls into doubt the validity of the disciplinary conviction and resulting loss of gain time. As such, Plaintiff's claim is barred

under Heck/Balisok. See Richards, 411 F. App'x at 278 (holding Heck applied because the plaintiff's theory of self-defense was contradictory to the facts upon which the disciplinary action was based—that the plaintiff instigated the physical encounter with officers); Roberts, 259 F. App'x at 228 (holding the plaintiff's § 1983 claim was Heck-barred because the disciplinary adjudication was not invalidated, and the claim was "at odds with the revocation of [the plaintiff's] good time credits"). See also McDuf v. Barlow, No. 3:17cv909-LC-HTC, 2019 WL 2016557, at *5 (N.D. Fla. Apr. 12, 2019), report and recommendation adopted, No. 3:17CV909-LC/HTC, 2019 WL 2010709 (N.D. Fla. May 7, 2019) (finding the Heck-bar applied because the plaintiff claimed he was wrongfully assaulted, while the disciplinary hearing team found the plaintiff engaged in conduct that precipitated a reactionary use of force); LaFlower v. Kinard, No. 2:10-cv-82-FtM-29SPC, 2011 WL 2183555, at * 3 (M.D. Fla. June 6, 2011) (dismissing the plaintiff's claim as Heck-barred because the plaintiff's "basis for [the] action [was] wholly inconsistent with the facts upon which the disciplinary conviction [was] based").

While not dispositive of but relevant to the Heck-bar issue, Plaintiff seeks to have the "falsified D.R. removed from his [FDOC] file[, and] to be . . . placed back in general population." Complaint at 16. And he requests the Court grant his "good time adjustment transfer . . . so he will be closer to family." Id.

Even if Plaintiff did not seek this relief, but sought exclusively damages, his claim would still be <u>Heck</u>-barred. <u>See</u> <u>Richards</u>, 411 F. App'x at 278 (noting the plaintiff's argument that he did not seek expungement of his disciplinary actions "misses the mark").

Accordingly, Defendants McCray, Davis, Mosely, and North's motion is due to be granted to the extent Plaintiff's due process claim is barred by <u>Heck</u>. The claim will be dismissed without prejudice to Plaintiff's right to refile his claims in a new civil rights action if and when he can demonstrate the disciplinary charge has been overturned.

### E. Requests for Injunctive Relief

Defendant Harris objects to Plaintiff's requests for injunctive relief, asserting Plaintiff may not obtain the relief he seeks from Defendant Harris or the other named Defendants. <u>See</u> Harris Motion at 7. In his Complaint, Plaintiff seeks to have the disciplinary report removed, to be placed back in general population, and to be transferred. Complaint at 16.

The Court finds Plaintiff is not entitled to the injunctive relief he seeks. Significantly, the FDOC is not a party to this action and Plaintiff fails to demonstrate supervisory liability. Moreover, expungement of a prison disciplinary action is relief obtainable in a habeas action, not in a civil rights case. <u>Preiser</u>, 411 U.S. at 500 ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he

seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

Additionally, courts generally will not interfere in matters of prison administration, including an inmate's confinement status or location of confinement. See Bell v. Wolfish, 441 U.S. 520, 547-48 (1979) ("[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches . . . not the Judicial."). See also McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Barfield v. Brierton, 883 F.2d 923, 936 (11th Cir. 1989) ("[I]nmates usually possess no constitutional right to be housed at one prison over another."). As such, Defendant Harris's motion is due to be granted insofar as he seeks dismissal of Plaintiff's requests for injunctive relief.

### V.   John Doe Defendants

In his Amended Complaint, filed on May 4, 2017, Plaintiff names three John Doe Defendants whom he has not yet identified. Plaintiff was given an opportunity, through discovery, to identify these individuals. Discovery closed on July 17, 2018, and Plaintiff's deadline to name the John Doe Defendants expired on January 15, 2019. See Orders (Docs. 44, 69).

Therefore, on January 30, 2019, the Court directed Plaintiff to show cause by March 5, 2019, why "John Doe B," "John Doe C," and "John Doe E" should not be dismissed from the action. See Order to Show Cause (Doc. 78). The Court notified Plaintiff that his failure show satisfactory cause by the designated deadline may result in the dismissal of the claims against Defendants "John Doe B," "John Doe C," and "John Doe E" without further notice. On February 25, 2019, Plaintiff filed a response (Doc. 82) stating he requested the named Defendants to provide the John Does' identities, but they have "refused to do so."

The Eleventh Circuit has consistently held that "fictitious-party pleading is not permitted in federal court," unless a plaintiff describes a John Doe defendant with such particularity that he or she can be identified and served. See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (affirming dismissal of a John Doe defendant where the plaintiff's complaint failed to identify or describe the individual "guard" allegedly involved); Williams v. DeKalb Cty. Jail, 638 F. App'x 976, 976-77 (11th Cir. 2016) ("[W]hen the real defendant cannot be readily identified for service, [a fictitious name] is insufficient to sustain a cause of action."). Cf. Dean v. Barber, 951 F.2d 1210, 1215 n.6, 1216 (11th Cir. 1992) (holding the district court erred in denying a motion to join a John Doe defendant because the plaintiff described the

individual with sufficient clarity and precision such that the inclusion of his name would have been "surplusage").

Plaintiff reiterates in his response to the order to show cause (Doc. 82) what he asserts in his Complaint—that John Does "C" and "E" can be identified through the video evidence. Defendant Harris filed under seal the video footage Plaintiff references. As such, it appears John Does "C" and "E" are capable of being readily identified such that the Court can direct service of process. Accordingly, dismissal of John Does "C" and "E" is not appropriate at this time. The Court will direct the named Defendants to review Plaintiff's allegations and the hand-held video footage and provide the names of the officers Plaintiff identifies in his Complaint at John Does "C" and "E." See Richardson v. Johnson, 598 F.3d 734, 739-40 (11th Cir. 2010) ("It is unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of . . . defendants who no longer work at the prison . . . .").

With respect to John Doe "B," Plaintiff fails to provide any identifying information upon which the Court may direct service of process on this defendant. John Doe "B" is, therefore, subject to dismissal for Plaintiff's failure to identify him. See Order (Doc. 78).[16]

---

[16] Plaintiff alleges John Doe "B" failed to report the alleged use-of-force incidents. See Complaint at 9, 13.

Therefore, it is now

**ORDERED:**

1.    Defendants McCray, Davis, Mosely, and North's Motion for
Summary Judgment (Doc. 57) is **GRANTED in part** and **DENIED in part**.
The motion (Doc. 57) is **GRANTED** to the extent Plaintiff's claims
for monetary damages from them in their official capacities are
barred by the Eleventh Amendment, and Plaintiff's due process claim
is **dismissed without prejudice.** The motion (Doc. 57) is **DENIED** to
the extent Defendants McCray, Davis, Mosely, and North are not
entitled to qualified immunity as to Plaintiff's Eighth Amendment
claim, and Plaintiff's request for compensatory and punitive
damages is not barred under the PLRA.

2.    Defendant Harris's Motion for Summary Judgment (Doc. 70)
is **GRANTED in part** and **DENIED in part.** The motion (Doc. 70) is
**GRANTED** to the extent Plaintiff's claim for monetary damages from
Defendant Harris in his official capacity is barred by the Eleventh
Amendment, and Plaintiff's requests for injunctive relief are
**dismissed.** The motion (Doc. 70) is **DENIED** to the extent Defendant
Harris is not entitled to qualified immunity as to Plaintiff's
Eighth Amendment claim, and Plaintiff's request for compensatory
and punitive damages is not barred under the PLRA.

3.    By **August 23, 2019,** Defendants Gaylord, North, McCray,
Davis, Mosely, and Harris must review Plaintiff's allegations and
the hand-held video footage and provide to the Court the names and

addresses of the officers Plaintiff identifies in his Amended Complaint (Doc. 9) at John Does "C" and "E." If the forwarding addresses are confidential, the addresses shall be provided to the Court in camera.

4.    Defendant John Doe "B" is **DISMISSED without prejudice** from this action.

5.    The **Clerk** shall terminate Defendant John Doe "B" as a party to this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of July, 2019.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Chester R. Hoffmann
Counsel of Record