UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHESTER R. HOFFMANN,

        Plaintiff,

vs.	Case No. 3:17-cv-361-J-39JRK

ANTHONY MCCRAY, et al.,

        Defendants.
_____

## **ORDER**

### **I. Status**

Plaintiff, Chester R. Hoffmann, is proceeding on a pro se Amended Civil Rights Complaint (Doc. 9; Am. Compl.) against Chad Gaylord and others. Plaintiff alleges Defendant Gaylord, a prison nurse, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Am. Compl. at 7, 9. Before the Court is Defendant Gaylord's Motion to Dismiss (Doc. 89; Motion). Plaintiff has responded (Doc. 99; Resp.). Accordingly, the motion is ripe for this Court's review.

### **II. Defendant's Motion & Standard of Review**

Defendant Gaylord seeks dismissal with prejudice, asserting the following defenses: failure to exhaust administrative remedies; failure to state a claim; qualified immunity; Eleventh Amendment immunity; and failure to allege physical injuries. See Motion at 1.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. See Iqbal, 556 U.S. at 678. In addition, when a plaintiff proceeds pro se, the court must liberally construe the allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

### III. Complaint Allegations

In his Complaint, Plaintiff describes two instances of excessive force, which occurred at Hamilton Correctional Institution (HCI) on October 17, 2016, involving other Defendants. Am. Compl. at 7. Defendant Gaylord did not participate in either force incident. Id. at 9, 11-12. After the force incidents, which included the use of chemical spray, officers brought Plaintiff for a decontamination shower. Id. at 12. When Plaintiff completed his

shower, officers placed a spit shield over Plaintiff's head. Id. Plaintiff alleges the officers did so to "hide and cover-up [his] injuries." Id.

Before officers brought Plaintiff inside the medical evaluation room, Plaintiff alleges one of them threatened him by saying, "how you are treated here depends on what you say and do." Id. Plaintiff alleges "the nurse [Gaylord] did not document all [his] injuries and did not remove the [spit shield] to check the face for injuries." Id.[1] Plaintiff asserts officers (not Defendant Gaylord) ignored his subsequent requests to see the doctor. Id. at 13.

As a result of the force incidents, Plaintiff asserts he suffered a concussion, temporary blindness, respiratory problems, a pulled muscle, sore fingers, lumps to his head, a "busted nose," and black eyes. Id. at 15.

**IV. Legal Analysis & Conclusions of Law**

**A. Exhaustion of Administrative Remedies**

Defendant Gaylord asserts Plaintiff did not exhaust his administrative remedies because Plaintiff did not timely file his grievances, he addressed multiple issues in the grievances he

---

[1] Plaintiff also alleges Defendant Gaylord failed to report the incidents, suggesting such a failure amounts to a constitutional violation. See Am. Compl. at 9. In his response to the motion to dismiss, Plaintiff clarifies he pursues against Defendant Gaylord one claim for deliberate indifference to serious medical needs under the Eighth Amendment. See Resp. at 4, 5.

3

filed, and he did not grieve a failure to provide medical care against Defendant Gaylord. See Motion at 5. In response, Plaintiff contends he filed an emergency grievance directly with the Secretary of the Florida Department of Corrections (DOC), permitting him to bypass the informal and formal grievance steps. See Resp. at 3. Plaintiff asserts his grievance was denied. Id.

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a prisoner may initiate a § 1983 action with respect to prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones v. Bock, 549 U.S. 199, 211 (2007). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id. at 90.

Under Florida law, proper exhaustion requires a prisoner to complete a three-step grievance process. See Fla. Admin. Code r. 33-103.001 through 33-103.018. However, a prisoner may bypass the

4

first two steps in the case of "[e]mergency grievances and grievances of reprisals, [and] protective management," among others. Fla. Admin. Code r. 33-103.007(3)(a). A prisoner permitted to bypass the first two steps may proceed directly to the third step by filing a grievance with the office of the Secretary of the DOC. Id. When a prisoner files a grievance directly with the Secretary's office, he must do so "within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code Ann. r. 33-103.011(d).

A review of the grievance documents (Doc. 89-1; Def. Ex. A) shows Plaintiff filed an emergency grievance directly with the Secretary's office on October 28, 2016, eleven days after the incidents. See Def. Ex. A at 1-4. In the grievance, Plaintiff wrote he was "very upset . . . and afraid" to submit the grievance at the institutional level because he was unsure whom he could trust. Id. at 4. Plaintiff reported the two use-of-force incidents. He also said the officers placed a "bag over [his] face" and then brought him to the medical examination room. Id. at 2.

Plaintiff does not identify the medical provider by name but says the "doctor" did not remove the spit shield (mask), which would have allowed the medical provider to see other signs of force, including a black eye and a lump on the side of his head. Id. Plaintiff notes, the officers "had the doctor scared to say anything." Id. Plaintiff concludes by saying he was considering

5

filing a lawsuit regarding not only the excessive force incidents but also for a denial of medical care. Id. at 4. The Secretary's office responded to Plaintiff's emergency grievance on December 20, 2016. Id. at 6. The responding employee denied the grievance and informed Plaintiff, "[t]he subject of [his] grievance [was] currently under review by the Departmental Staff." Id.

By filing the emergency grievance directly to the Secretary, bypassing the first two steps of the grievance process, Plaintiff exhausted his administrative remedies. Plaintiff timely filed his grievance within fifteen days of the incidents. See id. at 1. Moreover, the Secretary's office reviewed and denied his grievance on the merits; it was not returned without action for a violation of any procedural rules, such as addressing multiple issues or being untimely.[2] Id. at 6. Contrary to Defendant's representation, Plaintiff did file a grievance about Defendant Gaylord's actions,

---

[2] Defendant's attorney provides a "composite" exhibit with numerous grievances, none of which she references by number or date in the motion, including the October 28, 2016 emergency grievance. See Motion at 5. Rather, by general reference to the thirty-five-page exhibit, Defendant's attorney concludes Plaintiff did not exhaust his administrative remedies because some grievances were returned to him without action. Id. It is true some of Plaintiff's other grievances were returned to him without action for various reasons, including untimeliness, failing to follow administrative guidelines, or for being duplicative of complaints already under review. See Def. Ex. A at 18, 21, 28, 30, 35. That some of Plaintiff's grievances were returned without action does not void the emergency grievance, to which Plaintiff received an official DOC response before Plaintiff initiated this action. See Def. Ex. A at 6.

6

making more than a "passing" reference to his "trip to the medical office." See Motion at 5. While Plaintiff primarily describes the force incidents, he does complain about the cursory nature of the physical examination, saying, "[the] doctor checks me over[,] finds one abrasion on my back and rights [sic] it down[,] not once removing the mask where he would see other signs, the blood from my nose, black eye star[t]ing and lumps to my right side of my head." Def. Ex. A at 2. Significantly, Plaintiff also claims he was denied medical care and was considering filing a lawsuit, in part, because of the denial of medical care. Id. at 4.

Even though Plaintiff does not reference Defendant Gaylord by name, he was not required to do so. See Fla. Admin. Code r. 33-103.005 through 33-103.007. See also Jones v. Bock, 549 U.S. 199, 217 (2007) ("[N]othing in the statute imposes a 'name all defendants' requirement."); Parzyck v. Prison Health Servs., 627 F.3d 1215, 1218 (11th Cir. 2010) ("A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim."). Plaintiff's emergency grievance satisfies the "exhaustion requirement[, which] is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" Parzyck, 627 F.3d at 1219 (quoting Jones, 549 U.S. at 219). Accordingly, Defendant Gaylord's motion is due to be denied to the extent he seeks

dismissal for Plaintiff's failure to exhaust his administrative remedies.

**B. Qualified Immunity & Failure to State a Claim**

Defendant Gaylord argues Plaintiff fails to state a claim against him for deliberate indifference, which entitles him to qualified immunity. See Motion at 6-8. Plaintiff responds by repeating the facts alleged in his Complaint: that Defendant Gaylord "failed to remove the spit shield, failed to properly examine Plaintiff for his serious injuries and failed to document his serious injuries." Resp. at 4, 5.

An official sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting within his discretionary authority at the relevant times. Id. It is undisputed

Defendant Gaylord was acting within the scope of his discretionary duties as a nurse with the DOC at the relevant times. As such, the burden shifts to Plaintiff, who must demonstrate Defendant Gaylord violated a constitutional right that was "clearly established" at the time of the alleged violation. Id.

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must allege he had a serious medical need. Id. Second, the plaintiff must "allege that [the medical provider] . . . acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010).

> To establish deliberate indifference, [a plaintiff] must prove (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence. Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017) (internal citations omitted).

Allegations of medical negligence are not cognizable under § 1983. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). See also Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"). Likewise, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Assuming Plaintiff had a serious medical need at the time, Plaintiff fails to allege Defendant Gaylord acted with deliberate indifference to that need. Plaintiff alleges only that Defendant Gaylord failed to "document all [his] injuries and did not remove the [spit shield] to check the face for injuries." Am. Compl. at 12. Accepting as true Defendant Gaylord failed to closely inspect Plaintiff's face for injuries or failed to document all Plaintiff's injuries, Plaintiff does not allege Defendant Gaylord knew Plaintiff had injuries serious enough to necessitate immediate treatment and intentionally ignored those injuries or refused to provide treatment. To the extent Defendant Gaylord should have

discovered injuries that he did not, such an oversight does not constitute deliberate indifference. See Farmer, 511 U.S. at 838.

Even if DOC guidelines required that Defendant Gaylord examine Plaintiff's entire body including his face, without the spit shield, a failure to do so amounts to negligence or a simple violation of internal policies. See Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) ("Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment."). Moreover, Defendant Gaylord's failure to remove the spit shield does not mean he did not satisfactorily examine Plaintiff to the extent Defendant Gaylord, within his medical judgment, believed necessary. Of note, and as the Court referenced in its Order on Defendant Harris's motion for summary judgment, the spit shield was mesh, and Plaintiff's face was visible. See Order (Doc. 90) at 21 (noting the video footage shows Defendant Gaylord briefly looking through the mesh spit shield to inspect Plaintiff's face).

Not only do Plaintiff's allegations not permit the inference Defendant Gaylord knew Plaintiff had any serious injuries, it appears Defendant Gaylord had no reason to even suspect Plaintiff could have had serious injuries. It is undisputed Defendant Gaylord was not involved in or present during either force incident. See Am. Compl. at 11-12, 28, 34. Plaintiff alleges the officers who

11

used force against him placed the spit shield over his face to "cover-up" his injuries. Id. at 12. And, the medical records (Docs. 99-3, 99-4; Pl. Ex. C, Pl. Ex. D) suggest Defendant Gaylord knew only of the use of chemical spray, not the use of physical force, lending credence to Plaintiff's suggestion of a "cover-up." In the emergency room record, Defendant Gaylord noted the reason for the medical examination as "post use of force by security[,] chemical agents applied." Pl. Ex. C at 2. There is no reference to physical force being used against Plaintiff. Id. The physical examination revealed only an abrasion on Plaintiff's back, which was not bleeding. Id.; see also Pl. Ex. D at 2. Plaintiff exhibited no signs or symptoms of acute distress and voiced no complaints. Pl. Ex. C at 2.[3]

In sum, Plaintiff asserts no facts permitting a reasonable inference that Defendant Gaylord "acted with a state of mind that constituted deliberate indifference," Richardson, 598 F.3d at 737,

---

[3] Accepting as true Plaintiff's allegation that a Defendant-officer threatened him against reporting what happened, see Am. Compl. at 12, his failure to voice complaints is not surprising. In his response to Defendant Gaylord's motion, Plaintiff suggests Defendant Gaylord "contribut[ed] to the cover up of [Plaintiff's] injuries and the use of excessive force." See Resp. at 5. However, Plaintiff does not allege in his Complaint that Defendant Gaylord was complicit in any plan to conceal the alleged events or his injuries. See Am. Compl. at 12. In fact, in the grievance documents Plaintiff provides in support of his Complaint, he attributes the nurse's failure to thoroughly examine him to intimidation by the other Defendant-officers. Id. 28, 34. Plaintiff states, "I think they have the nurse scared to say anything." Id.

or that the physical examination was "so grossly incompetent, inadequate, or excessive as to shock the conscience," Harris, 941 F.2d 1495. As such, Defendant Gaylord is entitled to qualified immunity, and his motion is due to be granted.[4]

**V. Case Status & Appointment of Counsel**

This case is in a posture to proceed to settlement conference and, if necessary, trial. Accordingly, the Court finds Plaintiff is entitled to the appointment of counsel.[5] This Court has broad discretion in determining whether the appointment of counsel is appropriate in a civil rights action. Defendants are represented by counsel, the parties demand a jury trial, and there are sufficiently complex factual and constitutional issues involved in this litigation. Plaintiff will require the assistance of counsel at a settlement conference and, if the case does not settle, at pretrial conference and trial. Therefore, the Court will refer

---

[4] In light of the Court's ruling on qualified immunity, the Court will not address the remainder of Defendant's arguments raised in his motion.

[5] The Court ruled on Defendants McCray, Davis, Mosely, North's and Defendant Harris's motions for summary judgment on July 26, 2019. See Order (Doc. 90). Defendant Moots, who Plaintiff identified as John Doe "C" in his Complaint, see Am. Compl. at 5, 12, filed an Answer on October 13, 2019 (Doc. 101). Plaintiff's allegations against Defendant Moots are similar to those against the Defendants who moved for summary judgment. To the extent Plaintiff's claim against Defendant Moots requires the parties to exchange additional discovery, the Court will allow the parties time to do so after Plaintiff is appointed counsel, upon notice by the parties.

13

this case to the Jacksonville Division Civil Pro Bono Appointment Program.

Accordingly, it is now

**ORDERED**:

1. Defendant Gaylord's Motion to Dismiss (Doc. 89) is **GRANTED**.

2. Plaintiff's claim against Defendant Gaylord is **DISMISSED with prejudice**.

3. The **Clerk** of Court is directed to terminate Defendant Gaylord from this action.

4. This case is **referred** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of October, 2019.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Chester R. Hoffmann
Counsel of Record